KOLLER LAW, LLC
David M. Koller, Esquire
Attorney ID No: 90119
2043 Locust Street, Suite 1B                                  *Attorneys for Plaintiff*
Philadelphia, PA 19103
(T) 215-545-8917
(F) 215-575-0826

Law Office of Faye Riva Cohen, P.C.
Faye Riva Cohen, Esquire
Attorney ID No: 18839
2047 Locust Street                                            16    5708
Philadelphia, PA 19103
(T) 215-563-7776
(F) 215-563-9996

## IN THE UNITED STATES DISTRICT COURT
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LAURA MEDLIN** <br> 10128 Halkirk Manor Lane <br> Charlotte, NC 28278 <br> Plaintiff, <br><br> v. <br><br> **AMERICAN AIRLINES** <br><br> Defendant. | Civil No. |

### COMPLAINT

Plaintiff, Laura Medlin, (hereinafter "Plaintiff), by and through undersigned counsel, hereby files this complaint in her action against Defendant American Airlines (hereinafter "Defendant"). Plaintiff is alleging that she was subject to gender/sex discrimination and a hostile and unsafe working environment based on gender/sex in violation of Title VII.

### PARTIES

1. Plaintiff, Laura Medlin, is a resident of Charlotte, North Carolina.

2. Plaintiff is a member of a protected class, in that she is a woman.

3. Defendant American Airlines is a major international airline company with a principal place of business at 8000 Essington Avenue, Philadelphia, PA 19153.

4. At all times hereto, Defendant employed managers, supervisors, agents and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times hereto, Defendant employed managers, supervisors, agents and employees who acted directly or indirectly in the interest of the employer. In so acting these individuals engaged in the pattern and practice of discriminatory treatment which forms the basis of the Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. The Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts within this state and judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

7. This Court may exercise original subject-matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

8. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§1391(b)(1) and 1391(b)(2) because Defendant is located in and/ or regularly conducts

Case 2:16-cv-05708-ER Document 1 Filed 11/01/16 Page 3 of 9

business in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff exhausted her administrative remedies, as required under federal and state law.

10. Specifically, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

11. The EEOC issued Plaintiff a Notice of Right to Sue letter that was dated August 3, 2016.

12. Plaintiff filed the instant Complaint within ninety days from her receipt of the aforementioned Notice of Right to Sue letter.

## FACTS

13. Plaintiff worked for Defendant for over sixteen (16) years as a flight attendant. She was hired on May 1, 2000. Her immediate supervisor is Miguel Rodriguez.

14. In or around November, 2014, and at all relevant times thereafter, Defendant had a Social Media Policy ("Policy") that applied to its employees' social media activity.

15. This Policy applied to social media activity that derived from the Defendant's technology; social media activity that did not use Defendant's technology but was linked to the Defendant's systems; and social media activity that was engaged in on or off duty but which implicated Policy guidelines.

16. According to the Social Media Policy, Defendant's employees "will be held responsible" for "personal or business related" social media postings that "refer to, relate to, implicate or reflect on American Airlines or any other AMR company."

17. Included in the Policy's guidelines are directives that state:
    a. "Be aware that your off duty conduct may affect your employment."

    b. "Do not post a blog, wiki or social network site under the Company or Corporate header, or such that it appears to be endorsed by or originated from American."

    c. "Respect your audience and your coworkers. These venues are not the forum to make disparaging comments about supervisors, co-workers, customers or the Company."

    d. "Do not post anything publicly that would potentially embarrass you or the Company, or which could call into question your or the Company's reputation, including photographs or other images."

    e. "Do not use ethnic slurs, personal insults, obscenity, or engage in any conduct that violates the Company's policies or that would not be acceptable in the workplace."

18. After Plaintiff resigned from a union position, Plaintiff was harassed in unlawful ways by a group of male flight attendants who are based in Philadelphia.

19. The harassment included, but was not limited to, a campaign of harassment on various social media outlets, including Facebook.

20. The harassment on social media outlets included, but was not limited to, the following:

    a. Name calling, such as calling Plaintiff a "sow"; and

    b. Making defamatory comments about the Plaintiff;

21. Similarly situated male coworkers were not subjected to the same harassment via social media.

22. On or about May, 2015 Plaintiff complained about the harassment to Defendant's Human Resource Department by writing an email to the Human Resource Department's general human resource email address. Plaintiff never received a response.

23. On September 22, 2015, Plaintiff contacted Ana Burke-Leon, an employee-relations investigator employed by Defendant. Plaintiff explained that she previously contacted Defendant's Human Resources Department about this harassment, but never received a response. Plaintiff further expressed concern about potential retaliation and continued

4

harassment she received from coworkers on social media. Ms. Burke-Leon responded that someone from Defendant's Human Resources department would be in touch with her.

24. On September 22, 2015, Plaintiff received an email from Veronica Blakely, Defendant's HR Manager of Investigations. Ms. Blakely instructed Plaintiff to call Dan Cleverly, Senior Specialist in Defendant's Human Resource Department.

25. On September 24, 2015, Plaintiff received an email from Mr. Cleverly, asking Plaintiff to get into contact with him so that they could discuss her problem. Because she was taking care of a sick child, Plaintiff emailed Mr. Cleverly and asked if she could contact him via phone the next week. Mr. Cleverly agreed.

26. On or about September 28, 2015, Plaintiff called Mr. Cleverly at the phone number he provided. Plaintiff left Mr. Cleverly a voicemail so that they could discuss the harassment she had been subjected to.

27. On or about October 13, 2015, Mr. Cleverly emailed Plaintiff and apologized about not responding to her voicemail. In the email, Mr. Cleverly asked Plaintiff if she could provide a screenshot depicting the complained-of behavior, and a statement of her concerns. Plaintiff responded in an email that included screenshots of the complained-of behavior. Additionally, Plaintiff provided Mr. Cleverly with a statement that outlined her allegations concerning the gender-based harassment she had been subjected to on social media, primarily by her coworkers Jim Brown and Daniel Datzer. On October 20, 2015, Mr. Cleverly confirmed receipt of the materials submitted by Plaintiff, and explained that he would review and get back into contact with her "shortly."

28. On January 18, 2016, Plaintiff emailed Mr. Cleverly and inquired as to the status of his investigation, as Plaintiff had not heard from Mr. Cleverly in nearly three (3) months. On January 19, 2016, Mr. Cleverly responded "I'm very sorry about that. I clearly missed it." Mr. Cleverly asked Plaintiff when a good time was to speak with her. Plaintiff responded that she would prefer to communicate in writing. Mr. Cleverly did not respond to Plaintiff's request.

29. On June 29, 2016, Plaintiff again emailed Mr. Cleverly. Plaintiff explained that she still has not heard anything concerning her complaints about the harassing behavior she had been subjected to on social media by her coworkers. Mr. Cleverly again failed to respond to Plaintiff's allegations.

30. Upon information and belief, the individuals who targeted Plaintiff for harassment were not disciplined by Defendant and in fact have been promoted into supervisory positions.

31. On or about July 15, 2016, Plaintiff filed a charge of discrimination with the EEOC in relation to the gender based harassment she suffered from the Defendant's employees, and the Defendant's failure to enforce its Social Media Policy.

32. Ultimately, Defendant disregarded the Plaintiff's complaints, neglected to enforce its social media policy, and failed to protect the Plaintiff from a consistent pattern of undue, gender based harassment.

33. Due to the severe and pervasive nature of harassment she received, Plaintiff has experienced undue mental anguish and humiliation, such that the harassment negatively affected the conditions of Plaintiff's employment.

### COUNT I - GENDER DISCRIMINATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

34. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

35. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her gender (female).

36. As a result of Defendants' unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

37. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

38. The foregoing conduct created a sexually hostile work environment for Plaintiff.

39. Plaintiff suffered intentional discrimination because of her sex.

40. Defendant subjected Plaintiff to unwelcome conduct of a sexual nature that was severe or pervasive.

41. The discrimination detrimentally affected Plaintiff.

42. Plaintiff suffered tangible employment actions as alleged herein.

43. The discrimination would detrimentally affect a reasonable woman in Plaintiff's position.

44. *Respondent superior* liability exists such that Defendant is liable.

45. As a result of Defendant's conduct as aforementioned, Plaintiff has suffered damages as set forth herein.

46. Defendant is not entitled to an affirmative defense.

47. Defendant knew or reasonably should have known of the sexual harassment.

7

48. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### Prayer for Relief

**WHEREFORE**, Plaintiff requests that the Court grant her the following relief against Defendant:

(a)  Compensatory damages;

(b)  Punitive damages (where applicable);

(c)  Liquidated damages (where applicable);

(d)  Emotional pain and suffering;

(e)  Reasonable attorneys' fees;

(f)  Recoverable costs;

(g)  Pre and post judgment interest;

(h)  An allowance to compensate for negative tax consequences;

(i)  A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the Title VII.

(j)  Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited to, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

Respectfully Submitted,

November 1, 2016

By:     **FAYE RIVA COHEN**
Law Office of Faye Riva Cohen, P.C.
Faye Riva Cohen, Esquire
Attorney ID No: 18839
2047 Locust Street
Philadelphia, PA 19103
(T) 215-563-7776
(F) 215-563-9996

**DAVID KOLLER**
David M. Koller, Esquire
Attorney ID No. 90119
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
*Counsel for Plaintiff*

9