```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

LAURA MEDLIN                    :
                                :   CIVIL ACTION
    Plaintiff,              :   NO. 16-5708
                                :
  v.                            :
                                :
AMERICAN AIRLINES               :
                                :
    Defendant.              :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          August 27, 2018

      Presently before the Court is the motion for summary judgment filed by Defendant, American Airlines. Plaintiff, Laura Medlin, asserts claims against American for gender discrimination (Count 1) and a sexually hostile work environment (Count II) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). For the reasons set forth below, the Court will grant American's motion.

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

      Medlin is a flight attendant who, since 2012, has lived in Charlotte, North Carolina. She works for American and is based out of the Charlotte Douglas International Airport ("CLT").

Medlin asserts that five men, also flight attendants for American, posted comments on "Wingnuts," a closed Facebook group concerning flight attendants, which created a sexually hostile work environment. American does not own, control, or moderate Wingnuts. Medlin was not a member of the Wingnuts Facebook group.

The five men Medlin accuses of sexual harassment are Jim Brown, Matt Allen, Dan Datzer, Kevin Rivera, and Paul Sears. Medlin has never flown with them, but she contends that she has come into contact with them while engaging in work-related duties. Specifically, Medlin has not seen Brown since 2014, met Allen once in passing in 2013, has never met Datzer, and has not seen Rivera or Sears since 2009.

The Facebook posts are largely related to the individuals' differing beliefs concerning labor union representation. The specific instances regarding each man are as follows:

1. <u>Jim Brown</u>: Brown authored a Facebook post about Medlin allegedly being asked to step down as union mobilizer after the union received complaints that she was "badmouthing" them. Medlin does not know when Brown posted this comment and was unaware of it until an unknown person printed it and placed it in her mailbox at CLT sometime in the last two weeks of April 2015. Similarly, Medlin contends that on several occasions Brown

made other negative statements regarding her status as a union representative. At one point, while a colleague was trying to defend Medlin and another co-worker, Brown wrote to the colleague "You, L. Medlin, and K. Bettin all deserve each other . . . BYE FELICIA."[1]

    2.    <u>Matt Allen</u>: Allen stated in a Facebook post that "Laura Medlin is a mean girl who stirs shit for fun." Allen also posted a picture of Joan Rivers presenting her middle fingers with a caption "This is me to all no voters," referring to union members who voted against a particular union contract. Medlin was a "no voter." Allen also used the phrase "crusty cunts" on the Facebook group but Medlin does not know whether the phrase was ever directed at her. Medlin does not know when Allen posted the profanity, but thinks it must have been in 2014 or 2015.

    3.    <u>Dan Datzer</u>: Sometime in 2012, Datzer authored a Facebook post that was critical of Medlin's vote on a union contract. Datzer also sent Medlin a Facebook direct message in August 2012 stating that he had an attorney on retainer, which Medlin found threatening. On November 25, 2013, Datzer posted a comment to the Facebook group stating "So sorry I can't see the pearls of wisdom that must be dripping from a sows [sic] ear

---

[1]     The phrase "Bye Felicia" is a line of dialog from the 1995 movie "Friday." It is considered a dismissive farewell.

on this thread." Medline believes this comment concerned her. Finally, Datzer regularly used the word "cunt" in his Facebook posts but Medlin does not know if Datzer ever referred to her when using that word. Medlin first saw Datzer's posts with coarse language when they were emailed to her or when print-outs were placed in her mailbox.

4.  Kevin Rivera: Rivera posted a picture of Marlon Brando's character from the Godfather with the caption, "You wanna mess with me? You got another thing coming." Medlin does not know if Rivera directed this picture at her, but she believes he directed the post at those who disagreed with him about union-related issues, which would include Medlin.

5.  Paul Sears: Medlin was unable to identify any concrete instances of sexual harassment involving Sears.

Medlin does not identify any specific instances of sexual harassment perpetrated by any of the five men that occurred after October 1, 2015.

On August 1, 2016, Medlin filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which she alleged that "[s]tarting from 2011, I repeatedly reported to my Human Resources department that a male flight attendant had created a hostile work environment through his Facebook posts" and that "[a]round June 29, 2016, I reported

via e-mail to a Human Resources Senior Specialist that my request had been ignored." ECF No. 20-3 at 92.

After the EEOC dismissed Medlin's charge for lack of probable cause, she filed this suit on November 1, 2016. On January 23, 2017, for pre-trial purposes only, the Court consolidated the case with Chinery v. American Airlines, No. 16-2697. American filed the pending motion for summary judgment on August 28, 2017.

**II.  LEGAL STANDARD**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court views the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences

5

in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (citing Fed. R. Civ. P. 56).

**III. DISCUSSION**

    **A.    Timeliness of Medlin's Claims**

Under Title VII, a charge of discrimination "shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).[2] Medlin filed her charge of discrimination with the EEOC on August 1, 2016. In order for Medlin's charge to be

---

[2] Medlin filed her charge of discrimination with the EEOC's Charlotte, North Carolina office. For the purposes of that charge, North Carolina is a "non-deferral" state, and is, therefore, subject to the 180 day filing limit rather than the extended 300 day limit used in "deferral states" such as Pennsylvania. See Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 543 (E.D.N.C. 2008) (providing that "in the overwhelming number of cases, it is accurate to describe North Carolina as a non-deferral state with a 180-day filing period"). Medlin does not disagree with this assessment.

6

actionable, at least one of the related episodes of alleged sexual harassment must have occurred within the limitations period. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165-66 (3d Cir. 2013). Medlin, however, fails to allege any specific incidents of harassment after October 1, 2015, which indicates that her EEOC filing was well outside of the 180 day window.

Medlin acknowledged that all of the acts that she identified occurred outside of the limitations period[3] but argues that the dates of the actual harassment are irrelevant and, instead, the operative date is June 29, 2016, when she reported to the senior human resources specialist that her complaints of sexual harassment were being ignored by American.

Medlin's assertion is legally incorrect. While an employer's response to a harassment complaint can affect its liability, the failure to take action on such a complaint is not itself actionable sexual harassment. See Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 724 (2d Cir. 2010) (providing that "the failure to investigate [the plaintiff's] complaint could not itself have contributed to or constituted a

---

[3] In her response to American's statement of facts, Medlin asserts generally that the harassment continued after that date, but fails to provide any specific allegations. See e.g., ECF No. 24 ¶¶ 41 & 43 (in response to American's assertions that Rivera and Sears did not engage in actions Medlin viewed as sexual harassment after October 1, 2015, Medlin answered "Disputed. Medlin believes that [Rivera's and Sear's] actions were part of a pattern of harassment that extended beyond October 1, 2015").

hostile work environment"); Provencher v. CVS Pharmacy, Div. of Melville Corp., 145 F.3d 5, 15 (1st Cir. 1998) ("Failure by CVS to remediate did not exacerbate the harassment and, although it constitutes improper behavior that could subject the company to liability, it is not itself sexual harassment."), abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116-18 (2002); see also Hare v. Potter, 220 F. App'x 120, 134 (3d Cir. 2007) (non-precedential) (finding that defendant's "deficient investigation" did not constitute an adverse employment action).

In that Medlin does not allege any specific instances of sexual harassment within the applicable statutory window, her claims are untimely and American is entitled to summary judgment. In addition, as discussed below, her claims also lack merit.

### B. The Merits of Medlin's Claims

#### 1. Count I: Gender Discrimination

To establish gender discrimination premised on disparate treatment, Medlin must show that: (1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) members of the opposite sex were treated more favorably or there exist circumstances that raise an inference of discrimination. Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013).

8

Medlin fails to allege a prima facie claim of gender discrimination against American. Regarding the third factor, Medlin must demonstrate that American took an adverse employment action against her that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)). At no time has Medlin identified an adverse employment action, including in her response to American's motion.

To the extent that Medlin relies on her assertion that American failed to properly investigate her claims of sexual harassment, such a failure is not an adverse employment action. Hare, 220 F. App'x at 134; see also Scott, 918 F. Supp. 2d at 356 (noting that "[a] failure to investigate a complaint of discrimination . . . is not an adverse employment action").

As a result, on the merits, American is entitled to summary judgment on Count I of Medlin's complaint.

### 2. Count II: Hostile Work Environment

To establish a prima facie case of hostile work environment under Title VII, a plaintiff must prove that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the

discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of respondeat superior liability. Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017).

While there are a number of serious questions that are raised by Medlin's claims, including whether the alleged harassment over Facebook was due to her sex rather than her opinions regarding labor unions and whether it actually occurred in a work environment, it is clear that the alleged instances of harassment were not adequately severe or pervasive to establish American's liability.

As explained by the Supreme Court, for an atmosphere of harassment to be actionable, "the offending behavior 'must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Pa. State Police v. Suders, 542 U.S. 129, 146-47 (2004) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). A court must analyze the alleged harassment by "'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Faragher v. City of Boca Raton, 524 U.S. 775,

787–88 (1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Medlin details only a handful of instances of alleged sexual harassment between 2012 and 2015 that were posted on a Facebook group (of which she was not a member) including: (1) being called a "mean girl;" (2) possibly being referred to as a "sow;" (3) several comments about her union activities; (4) the posting of two celebrity pictures; (5) a direct message from Datzer that he had an attorney on retainer; and (6) the general use of sexually-oriented profanity. Even Medlin contends that the "more egregious examples of the harassment" were merely being called a "mean girl" and a "sow." ECF No. 25-1 at 24.

However, "insults in the workplace do not constitute discrimination 'merely because the words used have sexual content or connotations.'" Spangler v. City of Phila., 523 F. App'x 142, 146 (3d Cir. 2013) (non-precedential) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). It is true that the posts, if directed at Medlin, appear juvenile and unprofessional, particularly when referring to a colleague. Yet, Title VII is not a "general civility code"--it protects against extreme conduct, not against "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Faragher, 524 U.S. at 788 (internal quotation marks omitted).

The Court concludes that the complained-of conduct was not so objectively severe or pervasive that it would unreasonably interfere with an employee's work performance-- especially where the employee did not have regular work contact with the accused. Nor was it objectively physically threatening. As a result, the Court further concludes that American is entitled to summary judgment on the merits of Medlin's hostile work environment claim. See, e.g., Ballard-Carter v. Vanguard Grp., 703 F. App'x 149, 152 (3d Cir. 2017) (non-precedential) (finding that four uncivil comments were not "so severe as to alter the conditions of her employment" and could not "be considered pervasive"); Clair v. Agusta Aerospace Corp., 592 F. Supp. 2d 812, 822 (E.D. Pa. 2009) (asserting that "five stray remarks by co-workers during the course of a twenty-one month employment do not amount to pervasive and regular discrimination as a matter of law").

## IV. CONCLUSION

For the reasons set forth above, the Court will grant American's motion for summary judgment, entering judgment in its favor and against Medlin.

An appropriate order follows.